**MALK & POGO LAW GROUP, LLP**
Valter Malkhasyan (SBN 348491)
*valter@malkpogolaw.com*
Erik Pogosyan (SBN 345650)
erik@malkpogolaw.com
1241 S. Glendale Ave, Suite 204
Glendale, CA 91205
Tel: (818) 484-5204
Fax: (818) 824-5144

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEVAK KRIKORIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>POST CONSUMER BRANDS LLC, a limited liability company,<br><br>Defendant. | Case No.<br><br><u>CLASS ACTION COMPLAINT</u><br><br>1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*<br><br>2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*<br><br>3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. Seq.*<br><br>4. BREACH OF EXPRESS WARRANTY<br><br>5. UNJUST ENRICHMENT<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Sevak Krikorian ("Plaintiff" or "Krikorian"), each individually and each on behalf of all others similarly situated, bring this class action complaint against

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Post Consumer Brands, LLC ("Defendant" and/or "Post Consumer Brands") and alleges as follows:

## SUMMARY OF THE ACTION

1.      This is a class action lawsuit brought on behalf of all purchasers of Rachael Ray pet food products (the **"Products"**), sold online and at retail locations throughout California and the United States.

2.      Defendant falsely and deceptively advertises the Products as containing "No **Artificial Preservatives**" and as **"Natural Food"** (**"Challenged Representations"**). However, contrary to the Products' Challenged Representations, as explained in detail below, the Products actually contain citric acid — an artificial preservative ingredient used in food products.

3.      Through falsely, misleadingly, and deceptively labeling the Products, Defendant seeks to take advantage of consumers' desire for a truly premium products that are free from preservatives. Yet, Defendant does so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage.

4.      Plaintiff brings this action individually and in a representative capacity on behalf of similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined infra), for dual primary objectives: *One*, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium Plaintiff and consumers overpaid for Products that should, but fails to, comport with the Challenged Representations (which may include, for example, damages, restitution, disgorgement, and/or any applicable penalties, fines, or punitive/exemplary damages) solely to the extent that the causes of action pled herein permit such recovery. *Two*, Plaintiff seeks, on his individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendant's unlawful manufacture, marketing, and sale of the Products with the Challenged Representations to avoid or mitigate the risk of deceiving the

CLASS ACTION COMPLAINT

public into believing that the Products conform to the Challenged Representations, by requiring Defendant to change its business practices, which may include one or more of the following: removal or modification of the Challenged Representations from the Products' labels, removal or modification of the Challenged Representations from the Products' advertising, modification of the Products' formulation be it a change in ingredients or its sourcing and manufacturing processes, and/or discontinuance of the Products' manufacture, marketing, and/or sale.

    5.    True and correct copies of the Products' labels are pictured below.

///

///

///

///

///

///

///

///

///

///

CLASS ACTION COMPLAINT

### Rachael Ray Nutrish Real Salmon, Veggies & Brown Rice Recipe Gentle Digestion Dry Dog Food[1]



**Ingredients**

Salmon, Chicken Meal, Ground Whole Corn, Dried Peas, Grain Sorghum, Soybean Meal, Corn Gluten Meal, Chicken Fat (preserved With Mixed Tocopherols), Brown Rice, Dried Plain Beet Pulp, Flaxseed, Whole Millet, Dried Carrots, Dicalcium Phosphate, Natural Flavor, Malted Barley Flour, Salt, Calcium Carbonate, Taurine, Choline Chloride, Vitamins (vitamin E Supplement, Ascorbic Acid (source Of Vitamin C), Niacin, Vitamin A Supplement, Thiamine Mononitrate, D-calcium Pantothenate, Riboflavin Supplement, Pyridoxine Hydrochloride, Vitamin B12 Supplement, Folic Acid, Biotin, Vitamin D3 Supplement), Minerals (ferrous Sulfate, Zinc Sulfate, Copper Sulfate, Sodium Selenite, Manganese Sulfate, Calcium Iodate), Zinc Sulfate, Citric Acid (preservative), Rosemary Extract

---

[1] The Rachael Ray Nutrish Real Salmon, Veggies & Brown Rice Recipe Gentle Digestion Dry Dog Food includes, but is not limited to, the following sizes and/or variations: (a) 13-lb bag, and (b) 26 lb-bag.

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1

**<u>Rachael Ray Nutrish Peak Protein Open Prairie Recipe, Beef, Venison &
Lamb Dry Dog Food</u>**[2]



Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

---

[2] The Rachael Ray Nutrish Peak Protein Open Prairie Recipe, Beef, Venison & Lamb Dry Dog
Food includes, but is not limited to, the following sizes and/or variations: (a) 4-lb bag, (b) 12-lb
bag, (c) 23-lb bag, and (d) 23-lb bag (bundle of 2).

CLASS ACTION COMPLAINT

**Rachael Ray Nutrish Premium Natural Dry Dog Food, Real Beef, Pea, & Brown Rice Recipe**[3]



---

[3] The Rachael Ray Nutrish Premium Natural Dry Dog Food includes, but is not limited to, the following sizes and/or variations: (a) 5.5-lb bag, (b) 6-lb bag, (c) 13-lb bag, (d) 14-lb bag, (e) 26-lb bag, (f) 28-lb bag, (g) 40-lb bag, (h) 40-lb bag (bundle of 2), and (i) 50-lb bag. The Rachael Ray Nutrish Premium Natural Dry Dog Food also comes in the following flavors and/or variations: (a) Beef, Pea, & Brown Rice, (b) Chicken & Vegetables, and (c) Turkey, Brown Rice & Venison.

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1

**Rachael Ray Nutrish Zero Grain, Grain-Free Dry Dog Food[4]**



Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

---

[4] The Rachael Ray Nutrish Zero Grain, Grain-Free Dry Dog Food includes, but is not limited to, the following sizes and/or variations: (a) 11.5-lb bag, (b) 13-lb bag, (c) 23-lb bag, (d) 23-lb bag (bundle of 2), (e) 26-lb bag. The Rachael Ray Nutrish Zero Grain, Grain-Free Dry Dog Food also includes, but is not limited to, the following flavors and/or varaitons: (a) Chicken & Sweet Potato, and (b) Salmon & Sweet Potato.

CLASS ACTION COMPLAINT

**Rachael Ray Nutrish Savory Bites Dry Cat Food**[5]



Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

---

[5] The Rachael Ray Nutrish Savory Bites Dry Cat Food also comes in the following sizes and/or variations: (a) 2.5-lb bag, (b) 5-lb bag, and (c) 12-lb bag. The Rachael Ray Nutrish Savory Bites Yummy Dry Cat Food also includes, but is not limited to, the following flavors and/or variations: (a) Chicken & Veggies, and (b) Salmon & Veggies.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

**Rachael Ray Nutrish Zero Grain Chicken & Sweet Potato Recipe Grain-Free Dry Dog Food**[6]



---

[6] The Rachael Ray Nutrish Zero Grain Chicken & Sweet Potato Recipe Grain-Free Dry Dog Food includes, but is not limited to, the following sizes and/or variations: (a) 11.5-lb bag, (b) 13-lb bag, (c) 23-lb bag, (d) 23-lb bag (bundle of 2), and (e) 26-lb bag.

CLASS ACTION COMPLAINT

**Rachael Ray Nutrish Bark Real Beef Jerky, Peanut Butter & Bacon Dog Treats**[7]



---

[7] The Rachael Ray Nutrish Bark Real Beef Jerky, Peanut Butter & Bacon Dog Treats includes, but is not limited to, the following sizes and/or variations: (a) 4.5 oz, and (b) 11 oz.

10

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rachael Ray Nutrish Bark Jerky-Style Peanut Butter & Bacon with Real Chicken Dog Treat**[8]



---

[8] The Rachael Ray Nutrish Bark Jerky-Style Peanut Butter & Bacon with Real Chicken Dog Treat includes, but is not limited to, the following sizes and/or variations: (a) 4.5 oz, and (b) 28 oz.

11

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

6.      Consumers are deceived by Defendant's labeling and advertising of the Products with the Challenged Representations believing that they are purchasing a preservative-free Product. Consumers rely on Defendant's labeling and advertising of the Products with the Challenged Representations to be truthful and would not know that the Products actually contain a well-documented, artificial preservative.

7.      Reasonable consumers such as Plaintiff do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendant's advertised "No Artificial Preservatives" and "Natural Food" representations.

8.      Defendant knows that consumers are willing to pay more for natural, healthy products, and advertises the Products with the intention that consumers rely on the Challenged Representations made on the front of the Products packaging.

9.      By falsely labeling the Products with the Challenged Representations, Defendant has profited from consumers' preference for pet food products that are healthier or made free of preservatives.

## PARTIES

10.     **Plaintiff:** Plaintiff is, and at all times relevant hereto was, a citizen of California. Plaintiff purchased various flavors of the Products at different times during the Class Period, and most recently, he purchased the Rachael Ray Nutrish Gentle Digestion with Real Salmon, Veggies & Brown Rice Dry Dog Food from a Target store in Los Angeles, California, in November of 2024. **In making his purchase**, Plaintiff relied upon Defendant's labeling and advertising claims, specifically the representations stating "No Artificial Preservatives" and "Natural Food" prominently displayed on the front of the product packaging. Plaintiff understood these representations to mean that the products were free from artificial preservatives and artificial ingredients. Had Plaintiff known that the products contained artificial preservatives or ingredients, he would not have purchased the

CLASS ACTION COMPLAINT

products or would have paid significantly less for them. As a result, Plaintiff suffered economic injury.

11.    These claims were prepared and approved by Defendant and its agents and disseminated statewide and nationwide, to encourage consumers to purchase the Products.

12.    **Plaintiff's Future Harm:** Plaintiff would like to purchase the Products again only if he can be sure that Defendant is compliant with the state consumer protection laws. Plaintiff continues to see Defendant's Products in stores available for purchase, and desires to purchase it again if the representation regarding the Challenged Representations were in fact true. Since Plaintiff would like to purchase the Products again to obtain a pet food product that, as advertised, is truly preservative free and natural, Plaintiff would purchase it again in the future—despite the fact that it was once marred by false advertising or labeling—as Plaintiff would reasonably, but incorrectly, assume the Products were improved (no longer contain preservatives and artificial ingredients). In that regard, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of pet food products, such as the Products. Neither Plaintiff, nor reasonable consumers, have the requisite knowledge to accurately differentiate between ingredients that are "artificial preservatives" or not. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant fixed the formulation of the Products such that Plaintiff may buy it again, believing it to no longer be falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the Challenged Representations. Based on information and belief, the labeling of the Product purchased by Plaintiff is typical of the labeling of the Products purchased by members of the class.

13.    **Defendant**. Post Consumer Brands, LLC is a Minnesota limited liability company that maintains its principal place of business at 20802 Kensington Blvd. Lakeville, MN 55044. At all times during the class period, Defendant was the

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

manufacturer, distributor, marketer, and seller of the Products. Post Consumer Brands, LLC directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.

## JURISDICTION AND VENUE

14.   This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, § 10, because this case is a cause not given by statute to other trial courts. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

15.   Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of California who resides in this District. Plaintiff purchased the Product in this District. Defendant has deliberately marketed, advertised, and sold the Products within this District. Defendant receives substantial compensation from sales in this District.

16.   Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California. Defendant is authorized to do and is doing business in California.

## FACTUAL ALLEGATIONS

### A. Citric Acid

17.   Defendant advertises and display on the front labels of each of the Products that they are "Natural Food" and contain "No Artificial Preservatives" thereby misleading reasonable consumers into believing that the Products are free from artificial preservatives. However, the Products contain a well-known and well-documented artificial preservative, citric acid.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

18.    Citric acid acts as a preservative when added to food products, including the Products at issue. Citric acid acts as a preservative in the Products regardless of the subjective purpose or intent for why Defendant added citric acid to the Products because citric acid acts as a preservative *even if* very low levels are contained in the Product.[9]

19.    The Food and Drug Administration ("FDA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

20.    The FDA classifies and identifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of uses of preservatives like citric acid, including, in food. [10]

## Types of Food Ingredients

The following summary lists the types of common food ingredients, why they are used, and some examples of the names that can be found on product labels. Some additives are used for more than one purpose.

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

---

[9] *See* Doores, S., 1993. Organic acids. In: Davidson, P.M., Branen, A.L. (Eds.), *Antimicrobials in Foods.* Marcel Dekker, Inc., New York, pp. 95-136. http://base.dnsgb.com. ua/files/book/ Agriculture/Foods/Antimicrobials-in-Food. pdf

[10] *Overview of Food Ingredients, Additives & Colors, FOOD AND DRUG ADMINISTRATION, available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors.

21.    Citric acid's classification as a preservative is further confirmed by a Warning Letter sent by the FDA to the manufacturer of Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites," in which the FDA proclaimed the "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of Section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and *citric acid* but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."[11]

22.    The Agricultural Marketing Service of the United States Department of Agriculture ("USDA") has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[12]

23.    The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "[s]ome common chemical preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[13]

24.    Academic journals have also noted the use of citric acid as a preservative.[14] Indeed, "Citric acid acts as a preservative in many processed foods, keeping them fresh.  It does this by slowing or helping prevent the formation of

---

[11]  *See* FDA label compliance website, https://www.fdalabelcompliance.com/letters/ucm228663.
[12] Citric Acid and Salts, UNITED STATES DEPARTMENT OF AGRICULTURE, available athttps://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.
[13] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, available athttps://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf
[14] K. Kirimura, et al., Citric Acid, COMPREHENSIVE BIOTECHNOLOGY (SECOND EDITION)(2011), available at https://www.sciencedirect.com/science/article/abs/pii/B9780080885049001690?via%3Dihub; K.M.S. Islam, Use of citric acid in broiler diets, WORLD'S POULTRY SCIENCE JOURNALVOL.68,ISSUE 1(Feb. 21, 2012), available athttps://www.cambridge.org/core/journals/world-s-poultry-science-journal/article/abs/use-of-citric-acid-in-broiler-diets/DA15C2C1F90667525BF2414DF3BFF646 (  "Citric Acid (CA) is a weak organic acid which is a natural preservative and can add an acidic or sour taste to foods and soft drinks.").

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

bacteria, mold, yeast, and fungus."[15] "Today, citric acid is one of the most common and widely-used preservatives in the world[.]"[16]

25.    The Encyclopedia Britanica also classifies citric acid as a preservative because it has antioxidant properties.[17]

### B. Defendant's Use of Citric Acid

26.    Defendant uses a synthetic form of citric acid that is derived from heavy chemical processing.[18] The citric acid used in the Products is commercially produced and is manufactured using a type of black mold called *Aspergillus niger*.[19] Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor. *See* 21 C.F.R § 173.280. The citric acid that Defendant uses in the Products is produced through chemical solvent extraction and contains residues of those chemical solvents.

27.    An article published in the *Toxicology Reports Journal* explains that citric acid produced through aspergillus niger fermentation is artificial: Citric acid naturally exists in fruits and vegetables. However, it is not the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food additive. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergilus niger* is a known allergen.[20]

---

[15] What is citric acid, and what is it used for?, MEDICAL NEWS TODAY (July 23, 2021), available at https://www.medicalnewstoday.com/articles/citric-acid

[16] Citric Acid: One of the Most Important Preservatives in The World, FBCINDUSTRIES,INC. (Feb. 5, 2019), available at https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/

[17] Preservatives, BRITANICA, available at https://www.britannica.com/topic/food-additive/Preservatives#ref502211

[18] A. Hesham, Y. Mostafa & L. Al-Sharqi, Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates, 48 MYCOBIOLOGY 122, 123 (2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/ (emphasis added).

[19] *Id*; Pau Loke Show,et al., Overview of citric acid production from Aspergillus niger, FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015),available at https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[20] Iliana E. Sweis, et al., *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, TOXICOLOGY REP. 5:808-812 (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/Case 2:24-cv-03721-MWF-AJR

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

28.    The Food and Drug Administration ("FDA") has also sent warning letters to companies stating that certain products labeled as "natural" are misbranded because they contain **artificial** citric acid as an ingredient. For example, on August 29, 2001, the FDA sent Hirzel Canning Company ("Hirzel") a warning letter regarding its canned tomato products. With respect to Hirzel's Chopped Tomatoes Onions & Garlic and Chopped Mexican Tomatoes & Jalapenos, the FDA stated that these products could not bear the "All Natural" claim on the label because the products contained a synthetic ingredient, citric acid.

29.    Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[21] The *Toxicology Reports Journal* article explains that "the potential presence of impurities or fragments from the Aspergillus niger in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested."[22]

## C. Defendant Misleads Plaintiff and Reasonable Consumers, Who Relied on the Material and False Advertising Claims to their Detriment

30.    **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiff, in deciding to buy the Products. Specifically, the composition of the Products containing no artificial preservatives, and being natural—is important to consumers and motivates them to buy the Products.

31.    **Reliance**. The Class, including Plaintiff, reasonably relied on the Challenged Representations in deciding to purchase the Products.

32.    **Consumers Lack Knowledge of Falsity**. Consumers, including Plaintiff, do not know, and have no reason to know, at the time of purchase, that the Products' Challenged Representations are false, misleading, deceptive, and unlawful. That is because consumers, including Plaintiff, do not work for Defendant and therefore have

---

[21] *Id.*
[22] *Id.*

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

no personal knowledge of the actual ingredients used to make the Products or how those ingredients are made, including whether preservative or artificial ingredients are included. Additionally, average consumers do not have the specialized knowledge of a chemist or product-developer. Thus, reasonable consumers, like Plaintiff, cannot discern from the Products' ingredient disclosures whether certain ingredients, are artificial or preservatives. Furthermore, reasonable consumers, like Plaintiff, do not ordinarily review information on the back or side panels of a consumer product's packaging, like the Products' packaging, particularly dense, fine-print ingredient disclosures, or review such information on websites. Indeed, studies show that only approximately 7.7% to 11.6% of people even look at the side or back labels of consumer goods, such as ingredient lists, before they buy it.[23]

---

[23] Grunert, Klaus, et. al, *Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK*, 55 Appetite 177, at 179-181 (2010) available at https://reader.elsevier.com/reader/sd/pii/S0195666310003661?token=95E4146C1BB7D7A7C9A4 87F22F0B445BD44499550086E04870765EBE116ED32DBFE3795E60B69C75831563CD1BC6 655A&originRegion=us-east-1&originCreation=20220720162546 (consumer purchasing behavior study using in-store observation and interview data collection methodology to realistically estimate the degree consumers use nutritional information (found on side/back panels of food product labels and packaging), finding: (1) only **11.6% of respondents**, who looked at a product and placed it in their shopping cart, **were actually observed looking at the side/back panels of its packaging or labels** (panels other than the front panel) before placing it in the cart; (2) of those who looked at the side/back panels, only 31.8% looked at it the product "in detail" (i.e., 3.7% of respondents who looked at the product, looked at side/back panels in detail)); and (3) the **respondents self-reported frequency of reviewing side/back panels** (for nutritional information) **is overreported by 50%** when the in-store interview data and observational data are compared); Grunert, Klaus, et. al, *Use and understanding of nutrition information on food labels in six European countries*, 18(3) Journal of Public Health 261, 261, 263, 266 (2010), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (last accessed February 24, 2025) (consumer purchasing behavior study using in-store observation and interview data collection methodology to evaluate whether people look at food labels before buying them, where they looked, and how long they looked, finding: (1) respondents spent, on average, approximately 35 seconds, per product, on products they bought; and (2) 62.6% of respondents looked at the front packaging, and **only 7.7% looked elsewhere (side/back panels) on the packaging**, for products they bought); Benn, Yael, et al., *What information do consumers consider and how do they look for it, when shopping for groceries online*, 89 Appetite 265, 265, 270 (2015), available at https://www.sciencedirect.com/science/article/pii/S0195666315000422#bib0060 (last accessed February 24, 2025) (consumer purchasing behavior study using online eye-movement tracking and recordation, finding: (1) once on the product webpages, respondents tend to look at the pictures of products, rather than examine detailed product information; and (2) by comparison to pictures of products where 13.83-19.07% of respondents fixated, far less fixated on subsidiary information: 4.17% of respondents looked at nutrition information, 3.30% ingredients, 2.97% allergy information, and 0.09% recycling information for example).

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

33.    The average consumer spends generally not more than 13 seconds to make an in-store purchasing decision.[24] That decision is heavily based upon the product's front labeling because consumers do not have time to review and read every portion of the label and inspect in detail the rear label which depicts in small print the ingredients.

a. **Defendant's Knowledge**. Defendant knew, or should have known, that the Challenged Representations were false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representations, alongside their massive marketing campaign and brand strategy, to cause Plaintiff and similarly situated consumers to buy the Products believing that the Challenged Representations are true. **Knowledge of Falsity.** Defendant marketed the Products with the Challenged Representations, but Defendant opted to formulate and manufacture them in a manner that does not conform to these representations. Specifically, Defendant advertised and labeled the Products with the Challenged Representations, but, instead of using only non-artificial and non-preservative ingredients, Defendant chose to make the Products with citric acid, a well-documented artificial preservative.

b. **Knowledge of Reasonable Consumers' Perception.** Defendant knew, or should have known, that the Challenged Representations would lead reasonable consumers into believing that the Products were preservative free—i.e., the Products do not contain artificial preservative ingredients. Not only has Defendant labeled the Products with the Challenged Representations and executed a long-standing brand strategy and advertising campaign to identify the Products with the Challenged Representations, but Defendant also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the Challenged Representations, be it in isolation or conjunction with its marketing campaign, would mislead reasonable consumers into believing that the Products were made of only non-artificial-preservative ingredients. Thus, Defendant either knew the Challenged Representations were misleading before it marketed the Products to the Class, including Plaintiff, or Defendant

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

---

[24]    Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 13, 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-windown/ (citing *Shopping Takes Only Seconds… In-Store and Online*, EHRENBERG-BASS INSTITUTE OF MARKETING SCIENCE (2015)) (last visited February 24, 2025).

CLASS ACTION COMPLAINT

would have known that it was deceptive had Defendant complied with its statutory obligations.

c. **Knowledge of Materiality.** Defendant knew or should have known that the Challenged Representations are material to consumers. ***First***, manufacturers and marketers, like Defendant, generally reserve the front primary display panel of labels on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representations on the Products' labels demonstrate Defendant's awareness of its importance to consumers and Defendant's understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representations. ***Second***, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Products. Here, the constant, unwavering use of the Challenged Representations on the Products, advertisements, and throughout Defendant's marketing campaign, evidence Defendant's awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendant's intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales.

d. **Defendant Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations' inclusion on the Products' labels, and advertisements—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Defendant's knowledge of the Challenged Representations' falsity, and Defendant's knowledge that consumers reasonably rely on the Challenged Representations in deciding to buy the Products, Defendant deliberately chose to market the Products with the Challenged Representations thereby misleading consumers into buying or otherwise overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations mislead reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendant falsely advertised and warranted. Indeed, notwithstanding Plaintiff's demand to Defendant to stop misleading consumers with the Challenged Representations, Defendant has continued to market the Products using the Challenged Representations.

34.     By letter dated December 9, 2024, Plaintiff advised Defendant of its false and misleading claims pursuant to California Civil Code Section 1782, subdivision (a) regarding Defendant's use of citric acid – a preservative ingredient. Plaintiff has provided Defendant with notice of its violations of the CLRA pursuant to Civil Code § 1782(a).

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

D. **No Adequate Remedy at Law**

35.    **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.    **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b.    **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations, across a multitude of media platforms, including the Product's labels, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representation. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representation and omission made on the type of products at issue). Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiff (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' Challenged Representations are not true and providing accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Products sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

///

///

**CLASS ALLEGATIONS**

36.    **Class Definition**. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated, and as members of the Classes defined as follows:

> All persons or entities that, within four years prior to the filing of this Complaint through present, purchased the Products in the United States, displaying the Challenged Representations on the Products' labels, for purposes other than resale ("**Nationwide Class**"); and

> All persons or entities that, within four years prior to the filing of this Complaint through present, purchased the Products in California, displaying the Challenged Representations on the Products' labels, for purposes other than resale ("**California Subclass**")

("Nationwide Class" and "California Subclass," collectively, "**Class**").

37.    **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

38.    **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

39.    **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

40. **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

a. Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b. Whether Defendant's conduct of advertising and selling the Products as being preservative free and natural, creating the reasonable assumption that the Products do not contain any artificial preservative ingredients, when the Products contains citric acid, constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.

c. Whether Defendant used deceptive representation in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

d. Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

e. Whether Defendant advertised the Products with intent not to sell it as advertised in violation of Civil Code section 1750, *et seq*.;

f. Whether Defendant's labeling and advertising of the Products is untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

g. Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

h. Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.

i. Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.

j. Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k. Whether Plaintiff and the Class paid more money for the Products than they actually received;

l. How much more money Plaintiff and the Class paid for the Products than they actually received;

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

25

m.   Whether Defendant's conduct constitutes breach of warranty;

n.   Whether Plaintiff and the Class are entitled to injunctive relief; and

o.   Whether Defendant was unjustly enriched by its unlawful conduct.

41.   **Typicality**: Plaintiff's claims are typical of the claims of the Class Members he seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

42.   **Adequacy**: Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent.  Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

43.   **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons

a.   The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.   Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

c.   Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members

26

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

44.    **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

45.    **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

46.    **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT ONE

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq*.

### (*On Behalf of the California Subclass*)

47.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

48.    **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq*., on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

49.    **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

50.    **False Advertising Claims.** Defendant, in its labeling and advertising of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Challenged Representations (i.e., that the Products contain no artificial preservatives and are natural food) — despite the fact the Products contain citric acid, a well-documented artificial preservative. Such claim and omission appear on the front labels of the Products, which are sold at retail stores, point-of-purchase displays, and online.

51.    **Defendant's Deliberately False and Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's labeling because the Products contain citric acid, a well-documented artificial preservative. Defendant knew and knows that the Products contain citric acid, yet Defendant intentionally advertises and markets the Products to cause reasonable consumers to believe that the Products are preservative free and natural.

52.    **False Advertising Claims Cause Purchase of Product.** Defendant's labeling and advertising of the Products led to, and continue to lead to, reasonable consumers, including Plaintiff, believing that the Products were preservative free, to the exclusion of artificial preservative ingredients.

53.    **Injury In Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's Challenged Representations—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from Defendant.

54.    **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL.

CLASS ACTION COMPLAINT

The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

55. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

56. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alter its conduct or Defendant is otherwise ordered to do so.

57. **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentation, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentation.

58. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further,

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

59. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for a Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

///

///

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

**"Unfair" Prong**

60.  **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

61.  **Injury.** Defendant's actions of mislabeling the Products with the Challenged Representations do not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive a product commensurate with their reasonable expectations, overpay for the Products, and receive a product of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and/or advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

62.  **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the Defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

63.  **No Utility.** Here, Defendant's conduct of labeling the Products as containing "No Artificial Preservatives" and "natural food"—when the Products contain citric acid, has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

64.  **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

65.  **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

unfair conduct. Defendant knew or should have known of its unfair conduct.
Defendant's misrepresentation constitutes an unfair business practice within the
meaning of California Business and Professions Code Section 17200.

66. **Reasonably Available Alternatives.** There existed reasonably available
alternatives to further Defendant's legitimate business interests, other than the
conduct described herein. Defendant could have refrained from labeling the Products
with the Challenged Representations.

67. **Defendant's Wrongful Conduct.** All of the conduct alleged herein
occurs and continues to occur in Defendant's business. Defendant's wrongful conduct
is part of a pattern or generalized course of conduct repeated on thousands of
occasions daily.

68. **Injunction.** Pursuant to Business and Professions Code Sections 17203,
Plaintiff and the California Subclass seek an order of this Court enjoining Defendant
from continuing to engage, use, or employ their practices of labeling the Products
with the Challenged Representation.

69. **Causation/Damages.** Plaintiff and the California Subclass have suffered
injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff
and the California Subclass paid an unwarranted premium for the Products.
Specifically, Plaintiff and the California Subclass paid for Products that were
supposedly artificial preservative free, but instead purchased Products that contain
citric acid, a well-documented preservative. Plaintiff and the California Subclass
would not have purchased the Products, or would have paid substantially less for the
Products, if they had known that the Products' advertising and labeling were
deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of
ill-gotten gains pursuant to the UCL.

///

///

///

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

**"Fraudulent" Prong**

70. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

71. **Fraudulent & Material Challenged Representation.** Defendant used the Challenged Representations with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representations are false, and Defendant knew or should have known of its falsity. The Challenged Representations are likely to deceive consumers into purchasing the Products because it is material to the average, ordinary, and reasonable consumer.

72. **Fraudulent Business Practice.** As alleged herein, the misrepresentation by Defendant constitutes a fraudulent business practice in violation of California Business & Professions Code Section 17200.

73. **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representations to their detriment in that they purchased the Products.

74. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations. Alternatively, they could have refrained from including citric acid as an ingredient within the Products.

75. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

76. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of labeling the Products with the Challenged Representations.

77. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for a Products that was supposedly contained no artificial preservatives, but instead purchased Products that contain citric acid, a well-documented artificial preservative. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### "Unlawful" Prong

78. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

79. **Violations of CLRA and FAL.** Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

80. **Additional Violations.** Defendant's conduct in making the false representation described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentation of material facts, as set forth herein, violates California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

81. **Unlawful Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

82. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations and/or omitting the use of artificial preservative ingredients within the Products.

83. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

84. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.

85. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for a Products that were supposedly artificial preservative free, but instead purchased Products that contain citric acid – a preservative ingredient. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

///

///

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

## COUNT TWO

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (*On Behalf of the California Subclass*)

86. **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

87. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

88. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

89. **False & Material Challenged Representations Disseminated to Public.** Defendant violated section 17500 when they advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Challenged Representations disseminated to the public through the Products' labeling, marketing, and advertising. This representation was false because the Products does not conform to it. The representation was material because it is likely to mislead a reasonable consumer into purchasing the Products.

90. **Knowledge.** In making and disseminating the representation alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

91. **Intent to Sell.** Defendant's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

92. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further,

CLASS ACTION COMPLAINT

Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct prevent ongoing and future harm that will result.

93.    **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

///

///

///

///

CLASS ACTION COMPLAINT

# COUNT THREE

## Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

94. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

95. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

96. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful.

97. **Goods/Services.** The Products are a "good," as defined by the CLRA in California Civil Code §1761(a).

98. **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

99. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

100. **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

101. **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representations.

    a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [it] do[es] not have."

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

b. Section 1770(a)(7) by representing that the Products "[is] of a particular standard, quality, or grade . . . [when] [it is] of another."

c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell [it] as advertised."

102. **Knowledge.** Defendant's uniform and material representation regarding the Products was likely to deceive, and Defendant knew or should have known that their representations were untrue and misleading.

103. **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

104. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased it on different terms had they known the truth.

105. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were a substantial factor. The Challenged Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

106. **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code, section 1782, more than thirty days prior to the filing of this complaint, on or around December 9 of 2024, Plaintiff's counsel, acting on behalf all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant Post Consumer Brands, LLC at its headquarters and principal

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

place of business (20802 Kensington Blvd. Lakeville, MN 55044), and its registered agent addresses (251 Little Falls Drive Wilmington, DE 19808).

107. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

108. **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise requires Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Products with the Challenged Representations.

109. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers.   The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant. Accordingly, Plaintiff seeks an award of punitive damages against Defendant.

## **COUNT FOUR**

### **Breach of Warranty**

### (*On Behalf of the Nationwide Class and California Subclass*)

110. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

111. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

112. **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' labeling, and through their marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conforms to the Challenged Representations.

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

113. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' labeling, and through their marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant—to wit, that the Products, among other things, conform to the Challenged Representations.

114. **Breach of Warranty.** Contrary to Defendant's express warranties, the Products do not conform to the Challenged Representations and, therefore, Defendant breached its warranties about the Products and its qualities.

115. **Causation/Remedies.** As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

116. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

117. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

118. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

119. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

120. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

121. **Defendant's Unjust Receipt Through Deception.** Defendant's owing acceptance and retention of the benefit is inequitable and unjust because the benefit

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

was obtained by Defendant's fraudulent, misleading, and deceptive representation and omission.

122. **Causation/Damages.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's conduct to prevent ongoing and future harm that will result.

123. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for a Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice,

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## **PRAYER FOR RELIEF**

124. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel, consistent with applicable law;

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately ceases and desists from selling the unlawful Products in violation of law; that enjoin Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1

# **DEMAND FOR JURY TRIAL**

2      125.  Plaintiff hereby demands a trial by jury on all issues and causes of action

3   so triable.

4

5                                    **MALK & POGO LAW GROUP, LLP**

6

7

8                                    Valter Malkhasyan, Esq.

9                                    Erik Pogosyan, Esq.

10

11                                   *Counsel for Plaintiff and the Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT